**UNITED STATES of America, Appellant,**

v.

**PFIZER, INC., American Cyanamid Company and Bristol-Myers Company, Appellees.**

**No. 76–2021.**

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1977.

Decided Aug. 5, 1977.

---

Donald I. Baker, Asst. Atty. Gen., Barry Grossman, Paul A. Owens (argued), John J. Powers, III, Edward S. Panek, Jr., Dept. of Justice, Washington, D.C., and Don O. Burley, Minneapolis, Minn., Attys., on brief and reply brief, for appellant; John Galus, Washington, D.C., on brief and William T. Clabault and Martin I. Eisenstein, Washington, D.C., on reply brief.

Samuel W. Murphy, Jr., New York City, for appellees.

Before GIBSON, Chief Judge, and BRIGHT and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This case presents another aspect of the protracted litigation commenced a number of years ago by a number of plaintiffs, including the United States government, against seven chemical companies seeking damages and other relief on account of alleged overcharges for the broad spectrum antibiotic drug known as tetracycline which the defendant chemical companies have been selling as a patented drug covered by the so-called Conover patent which was issued to the defendant, Pfizer, Inc., in 1955. The other defendants in the case are American Cyanamid Company, Bristol-Myers Company, Olin Corporation, Squibb Corporation, E. R. Squibb & Sons, Inc. and Upjohn Company. The litigation has been before us many times in various contexts. *See United States v. Pfizer, Inc.*, 560 F.2d 319 (8th Cir. 1977), and *Republic of Vietnam v. Pfizer, Inc.*, 556 F.2d 892 (8th Cir. 1977), and earlier decisions cited therein.

This particular case was commenced by the government in the United States District Court for the District of Columbia in 1969 and in due course was transferred for final disposition to the United States District Court for the District of Minnesota[1] whence this appeal comes. The government seeks reversal of an order of the district court granting a motion of the defendants Pfizer, Cyanamid and Bristol-Myers for summary judgment dismissing Count 2 of the government's complaint in which count the movants were named as defendants. The district court certified that an interlocutory appeal from its order would be appropriate, and we accepted the appeal. 28 U.S.C. § 1292(b). We affirm.

The government's complaint is in three counts. In the first count the government seeks affirmative cancellation of the Conover patent on the ground that it had been procured by fraud on the Patent Office. The second count, which is the one with which we are immediately concerned, was a common law action for fraud and deceit in which the government seeks to recover millions of dollars in damages on account of alleged overcharges for the drug which the government allegedly had been required to pay in connection with its purchases of the product for use in this country and abroad. The third count alleges that the defendants unlawfully conspired to violate and violated provisions of the federal antitrust laws in the marketing and pricing of the drug, and

---

1. The Honorable Miles W. Lord, United States District Judge.

the government seeks to recover actual damages for the alleged overcharges as authorized by the 1955 addition to § 4A of the Clayton Act of 1914. 15 U.S.C. § 15a. Significantly, the government, in order to recover under Count 2 would not be required to prove antitrust violations and under Count 3 the government would be limited in recovery to damages sustained within four years prior to the filing of the suit in 1969, 15 U.S.C. § 15b, whereas its recovery under Count 2 would not be so limited in point of time. The damage differential is very material, and in granting the motion for summary judgment with respect to Count 2 the district court noted that its presence in the case has been a highly complicating factor.

The government's theory on Count 2 is that the Conover patent was obtained for the purpose of enabling the defendants to market the drug at higher prices than it would have brought on the market had it been unpatented, that overcharges for the drug were a foreseeable consequence of the fraud, and that the fraud was a proximate cause of the damages that the government contends that it has sustained in connection with its purchases of the drug. It will be observed that the government is suing as a consumer, in fact probably the largest consumer of them all.

In support of their motion for summary judgment the defendants contended that a consumer, including the government, has no private right of action for damages for overcharges for a patented article simply because the patent was or may have been obtained by means of a fraud on the Patent Office, that the fraud on the Patent Office, if there was one, was not a proximate cause of the government's damages, and that, in any event, the government waived its cause of action for fraud by not suing for cancellation or rescission of the patent well prior to 1969 when it had knowledge or information to the effect that the patent had been obtained by fraud.

The government denied that any of those contentions had merit. It insisted and insists that the fraud in question was a proximate cause of its damages, and that it has a right to maintain a common law action to recover those damages. As to waiver, the position of the government is that in view of other litigation involving the validity of the Conover patent it was justified in not commencing this suit for cancellation earlier than it did; it further justifies its non-action against the patent until 1969 by the fact that it had such great need for the drug that it would have been unreasonable to require it to seek at an early stage a cancellation of the patent.

The district court dealt with the motion in a full but unpublished memorandum opinion. Judge Lord viewed the question of whether a consumer has a right to recover from overcharges for a patented article on the ground that the patent was obtained by fraud as a novel one, and he found it unnecessary to decide that question.

Judge Lord was of the view that even if a private cause of action existed, the fraud of the defendants was not as a matter of tort law a proximate cause of the damage, and he also considered that as a matter of law the government had waived the fraud.

As to proximate cause, the district court pointed out that the government did not rely on the patent in buying the drug and was not influenced in making its purchases by the fact that the drug was patented. And the district court also pointed out that for a time the government made large purchases of the drug abroad for the purpose of obtaining the benefit of lower prices.

The standards that the district court was required to apply in passing upon the defendants' motion and the standards that we are required to apply in reviewing its action are too well established to require restatement in detail. The district court was required to assume and we are required to assume that the Conover patent was obtained by fraud on the Patent Office committed by the defendants, and that the defendants were able to market the patented product in the United States and to the United States government at higher prices than they could have obtained for it had the Conover patent not been issued.

We think that the question of whether the fraud on the Patent Office was a proximate cause of the government's damage within the concept of "proximate cause" as it exists in the common law of torts including the law of fraud and deceit is a close one.

It can be argued that if a person fraudulently obtains a monopoly from a public agency by fraud and with the intent and purpose of using his monopoly as a means of exacting excessive prices for his product or services, his fraud is a proximate cause of damage sustained by a consumer who has been forced to do business with the monopolist.

On the other hand, it can be argued that the issuance of a patent for an article does not necessarily mean that the article will be sold for a higher price than it would bring on the market if unpatented, and that the underlying fraud in obtaining the patent is but a remote and indirect cause of a later overcharge.

However, we find it unnecessary to decide the question of causation; nor do we find it necessary to pass upon the correctness of the district court's determination that the government waived its right, if any, to sue for damages resulting from the fraud in question.

As far as Count 2 of the complaint is concerned, the government occupies no position other than that of a consumer of tetracycline. The patent laws do not expressly give consumers any private right of action against patentees for damages that the former may be thought to have sustained as a result of the fraudulent procurement of patents, and we do not consider that any such consumer right of action exists. *Zenith Laboratories, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508 (3d Cir.), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976).

In that case it was held that a private action may be maintained by a licensee for royalties paid to a patentee who has been induced to take a license under the patent as a result of fraud practiced upon him by the patentee, or by a competitor of a patentee who has obtained his patent fraudulently and then uses it to obstruct the competitor's efforts to develop and market a similar product, but that a mere purchaser of the product from the patentee has no private cause of action for fraud on the Patent Office. 530 F.2d at 515. Here the government was neither a licensee of the defendants nor was it in competition with them.

No question is raised as to the right of the government to maintain Count 1 and Count 3, and the only effect of the dismissal of Count 2 is to limit the monetary award which the government may ultimately obtain to damages incurred during the period beginning four years prior to the filing of the suit.

Affirmed.